IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| M.D., *BY AND THROUGH HER NATURAL PARENTS AND GUARDIANS, MICHAEL AND JULIE ANN DOTSON*, | ) ) ) ) ) 2:22-cv-517 |
| Plaintiff, | ) Judge Marilyn J. Horan ) |
| v. | ) ) |
| TRINITY AREA SCHOOL DISTRICT, | ) ) |
| Defendant. | ) |

### MEMORANDUM OPINION

Plaintiff, M.D., by and through her natural parents and guardians, Michael and Julie Ann Dotson, brings suit against Trinity Area School District alleging claims for gender discrimination and retaliation pursuant to Title IX of the Education Amendments Act of 1972. (ECF No. 9). Presently before the Court is Trinity's Motion to Dismiss M.D.'s Amended Complaint. (ECF No. 11). For the reasons that follow, Trinity's Motion to Dismiss will be granted in part and denied in part.

I. **Statement of Facts**

M.D. is a 16-year-old minor who currently attends Trinity High School. (ECF No. 9, at ¶ 7). M.D. is on the girls' basketball team at Trinity High School. (ECF No. 9, at ¶ 9). M.D. was injured in March 2021, and she presented a doctor's excuse to her basketball coach, Coach Kathy, that stated that M.D. was prohibited from doing any physical activities. (ECF No. 9, at ¶ 10). Coach Kathy encouraged M.D. to attend games and allowed M.D. to assist with drills, workout with the on-site trainers, and manage the books during basketball games. (ECF No. 9, at ¶ 11). Soon after tryouts in mid-November, Coach Kathy told M.D. that it was mandatory that

1

she attend all basketball activities and that M.D. should only be absent to attend physical therapy. (ECF No. 9, at ¶ 11).

The girls' basketball team traveled to Washington, D.C. for a tournament on December 9-11, 2021. (ECF No. 9, at ¶ 14). While in the hotel room at the tournament, M.D. and her fellow teammates learned about a sexual assault that occurred at a party. (ECF No. 9, at ¶ 15). The information came from the alleged perpetrator's sister. (ECF No. 9, at ¶ 15).

On December 14, 2021, M.D. and a friend were talking about the sexual assault allegations at a boys' basketball game. (ECF No. 9, at ¶ 20). Two of the trainers overheard the conversation, and one of the trainers reported the allegations to high school administration. (ECF No. 9, at ¶ 20).

On December 15, 2021, M.D. was called down to the office by the Vice Principal, and M.D. provided a written statement of what she knew about the sexual assault. (ECF No. 9, at ¶ 21). While M.D. was completing her written statement, the Vice Principal asked M.D. how she would feel if her reputation could be potentially ruined by such an allegation, and he also stated that he thought the allegation was simply a rumor. (ECF No. 9, at ¶ 22).

M.D. attended practice on December 15, 2021, but Coach Kathy immediately sent her home. (ECF No. 9, at ¶ 23). Coach Kathy claimed at the time that she was changing the practice and that M.D. did not need to attend. (ECF No. 9, at ¶ 23).

On December 15, 2021, Coach Kathy sent M.D. home and informed all of the players on the girls' basketball team that she was cancelling the December 16, 2021 girls' basketball game because of a rumor that was going around. (ECF No. 9, at ¶ 18). The boys' basketball game scheduled for December 16, 2021 was not cancelled. (ECF No. 9, at ¶ 19).

On December 16, 2021, Mr. Rich[1] called M.D. to his office, with Coach Kathy, and he told M.D. that she could no longer attend practices or games because the school could not assume any liability if M.D. was to get injured while sitting on the bench. (ECF No. 9, at ¶ 24). The Amended Complaint alleges that there were other injured athletes on the girls' basketball team at the time, but that M.D. was the only injured athlete who was prohibited from attending practices or games. (ECF No. 9, at ¶ 25). The Amended Complaint also alleges that Coach Kathy told Landi Smith[2] not to talk to M.D. (ECF No. 9, at ¶ 26).

M.D.'s parents began seeing changes in their daughter's behavior and conduct. (ECF No. 9, at ¶ 27). M.D.'s grades have dropped, and she began talking about wanting to quit school and basketball forever. (ECF No. 9, at ¶ 27). M.D. has begun seeing a therapist and has been diagnosed with depression. (ECF No. 9, at ¶ 28). M.D. is currently attending school online. (ECF No. 9, at ¶ 28).

## II.  Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court clarified

---

[1] M.D. does not identify the full name or position of Mr. Rich in her Amended Complaint.
[2] M.D. does not identify Landi Smith's relation to M.D. or the circumstances of this lawsuit in her Amended Complaint.

that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule

12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

In a civil rights case, when the court grants a motion to dismiss for a failure to state a claim, the court must offer the plaintiff leave to amend, even if it was not requested by the plaintiff, "unless doing so would be inequitable or futile." *Phillips*, 515 F.3d at 246; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010)).

### III. Discussion

#### A. Title IX Gender Discrimination

Trinity argues that M.D. has not brought forth sufficient factual allegations to show that she experienced gender discirmination. (ECF No. 12, at 6). M.D. does not address her Title IX gender discrimination claim within her brief.

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance" 20 U.S.C. § 1681(a). Discrimination on the basis of sex is defined as treating someone differently simply because that

person's sex is different from a similarly situated person of the opposite sex. *See City of L.A., Dept. of Water & Power v. Manhart*, 435 U.S. 702, 711 (1978). Courts look to the analytical framework used to analyze Title VII gender discrimination claims when evaluating Title IX gender discrimination claims. *Summy-Long v. Pa. State Univ.*, 715 F. App'x 179, 182 (3d Cir. 2017). Gender discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework. 411 U.S. 792 (1973).

Initially, M.D. must establish a prima facie case of gender discrimination. "To establish a claim under Title IX, a plaintiff must show that (1) she was excluded from participation in, denied the benefits of, or subjected to discrimination in an education program; (2) that the program receives federal financial assistance; and (3) that the exclusion was on the basis of her gender." *Tingley-Kelley v. Trustees of Univ. of Pa.*, 677 F. Supp. 2d 764, 775 (E.D. Pa. 2010).

M.D. alleges in her Amended Complaint that she experienced gender discrimination because the December 16, 2021 girls' basketball game was canceled but the boys' basketball game scheduled for that same day was not cancelled. She also alleges that Coach Kathy told the girls' basketball team that the December 16, 2021 game was canceled because of a rumor about the sexual assault. These bare allegations alone are insufficient to support M.D.'s gender discrimination claim. M.D.'s Amended Complaint fails to state how she was treated differently from a similarly situated male comparator because she was female. Similarly, M.D.'s Amended Complaint does now show how such purported discrimination taken against M.D. was based on her sex. Since the Amended Complaint contains conclusory allegations and a threadbare theory of any gender discrimination against M.D., Trinity's Motion to Dismiss M.D.'s gender discrimination claim will be granted. As the Court cannot say that amendment will be

inequitable or futile, M.D. will be granted leave to amend with regard to her gender discrimination claim.

### B. Title IX Retaliation

Trinity argues that M.D.'s retaliation claim must fail because she does not articulate that she suffered any adverse action or was denied the benefits of the services, programs, and activities offered by the School District. (ECF No. 12, at 7). M.D. argues that, after reporting the sexual assault allegation, she was prohibited from sitting on the bench during practices and games, while other injured players who did not report the sexual assault allegation were still permitted to sit on the bench. (ECF No. 14, at 3).

Under Title IX, "a plaintiff who lacks direct evidence of retaliation must first make out a prima facie case of retaliation by showing (a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." *Miller v. Kutztown Univ.*, 2013 WL 6506321, at *3 (E.D. Pa. Dec. 11, 2013) (citing *Weston v. Pa.*, 251 F.3d 420, 430 (3d Cir. 2001), *overruled in part on other grounds by*, *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 126 (2006)). Title IX retaliation claims are considered intentional discrimination and are not judged under the deliberate indifference standard. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175-83 (2005).

Trinity does not dispute that M.D. was engaged in a protected activity by reporting the sexual assault allegation. As such, M.D. has satisfied her burden under the first prong of her prima facie case.

Trinity does, however, dispute that M.D. suffered an adverse action. Trinity argues that M.D. was no longer allowed to sit on the sidelines during games and practices due to her physical injury rather than because she reported the sexual assault allegation. M.D. responds that

other injured players who did not report the sexual assault were permitted to sit on the bench during games and practices and that she was treated differently in retaliation for engaging in the protected activity of reporting the sexual assault allegation. Thus, M.D.'s Amended Complaint presents sufficient evidence to suggest that she suffered an adverse action by being prohibited from sitting on the bench during games and practices.

In order to establish causation, the plaintiff is required to sufficiently raise an inference that the protected activity was the "likely reason" for the adverse action. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017) (citation omitted). Whether there is a causal nexus between the protected activity and the adverse action is a totality-of-the-circumstances inquiry. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015). A plaintiff asserting retaliation may rely solely on temporal proximity between the protected conduct and the adverse action to create an inference of causation, but only if the timing is "unusually suggestive" of a retaliatory motive. *Id.* If there is no temporal proximity, the Court is to consider the circumstances as a whole, including any intervening antagonism that may have occurred against the plaintiff, inconsistences in the reasons given for the adverse action, and any other evidence to suggest retaliatory animus. *Leboon v. Lancaster Jewish Cmty, Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007).

Here, M.D.'s Amended Complaint has included sufficient factual material to meet the causation element of her prima facie case. M.D. was injured before the beginning of the basketball season. Soon after try-outs in mid-November, Coach Kathy told M.D. that all basketball activities were mandatory and that M.D. should only be absent for physical therapy. On December 15, 2021, M.D. reported the sexual assault allegations to the Vice Principal. M.D. attended practice that same day, but Coach Kathy immediately sent her home. The next day, on

December 16, 2021, Mr. Rich and Coach Kathy told M.D. that she could no longer sit on the bench during practices or games because the school could handle any liability if M.D. was to be injured while sitting on the bench. The Amended Complaint also alleges that there were other athletes on the girls' basketball team who were also injured at this time, but that M.D. was the only injured athlete who was prohibited from attending practices or games. The timing between the protected activity and the adverse action are highly suggestive as they occurred within one day of each other. This suggests retaliatory animus, where M.D. was treated differently than similarly situated athletes because she engaged in the protected activity of reporting a sexual assault allegation. M.D.'s Amended Complaint therefore contains sufficient allegations in support of her retaliation claim. As such, Trinity's Motion to Dismiss will be denied as to M.D.'s retaliation claim.

**IV.     Conclusion**

For the reasons stated herein, Trinity's Motion to Dismiss will be granted in part and denied in part. Trinity's Motion to Dismiss, with regard to M.D.'s Title IX Gender Discrimination, will be granted with leave to amend. Trinity's Motion to Dismiss, with regard to M.D.'s Title IX Retaliation claim, will be denied.

M.D. may file a Second Amended Complaint with regard to her Title IX Gender Discrimination claim. M.D. may file a Second Amended Complaint by October 28, 2022. If M.D. files a Second Amended Complaint, Trinity shall file its responsive pleading within 14 days of M.D.'s filing of her Second Amended Complaint. If there is no Second Amended Complaint filed by October 28, 2022, Trinity shall file its Answer to the remaining claim within

M.D.'s Amended Complaint by November 11, 2022.

    An appropriate Order will be entered.

DATE: 10/14/2022

Marilyn J. Horan
United States District Judge