**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**PITTSBURGH**

| | | |
|---|---|---|
| M.D., BY AND THROUGH HER NATURAL PARENTS AND GUARDIANS, MICHAEL AND JULIE ANN DOTSON; | ) | 2:22-CV-00517-MJH |
| Plaintiff, | ) | |
| vs. | ) | |
| TRINITY AREA SCHOOL DISTRICT, | ) | |
| Defendant, | | |

**MEMORANDUM OPINION**

On April 4, 2022, Plaintiff, M.D., by and through her natural parents and guardians, Michael and Julie Ann Dotson, filed suit against Defendant, Trinity Area School District ("Trinity"). (ECF No. 1). Plaintiff alleged that Trinity discriminated against her based upon sex, in violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. §1681 *et seq.* (*Id.*). Plaintiff further alleged that Trinity violated Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* by retaliating against her. (*Id.*). On June 16, 2022, Defendant filed a Motion for a More Definite Statement. (ECF No. 6). On July 7, 2022, Plaintiff filed an Amended Complaint. (ECF No. 9). On July 21, 2022, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint, accompanied by a Brief in Support. (ECF Nos. 11 & 12). On October 14, 2022, this Court granted in part and denied in part Defendant's Motion to Dismiss. (ECF No. 16). The Court granted Defendant's Motion to Dismiss as to the Title IX sex-based discrimination claim and denied the motion as to the retaliation claim. (*Id.*). Plaintiff was

permitted to amend her discrimination claim, which she did not do. As such, the only remaining claim is the Title IX retaliation claim.

Fact discovery closed on October 20, 2023. On January 26, 2024, Defendant filed a Motion for Summary Judgment, accompanying brief, and Concise Statement of Material Facts. (ECF Nos. 33-35). On February 7, 2024, Plaintiff filed her Disputed Statement of Material Facts and Response to Defendant's Motion for Summary Judgment. (ECF Nos. 37 & 37-1). Defendant did not file a Reply. Defendant's Motion for Summary Judgment is now ripe for decision. For the reasons stated below, Defendant's Motion for Summary Judgment will be granted.

## I. Statement of Facts

Plaintiff, M.D., was a student athlete who played on the girls' basketball team at Trinity High School. (ECF No. 37, at ¶ 2). M.D. was 16 at the time that this suit was filed. (*Id.* ¶ 2). In March of 2021, Plaintiff injured her back while lifting weights with her team. (*Id.* ¶ 4). Plaintiff did not receive a diagnosis as to the cause for her back pain until August or September of 2021. (*Id.* ¶ 5). Plaintiff's basketball coach, Kathleen McConnell-Miller, was first notified of Plaintiff's back injury during Trinity's fall basketball league in September or October of 2021. (*Id.* ¶ 8). On September 23, 2021, Plaintiff's mother provided Trinity with a doctor's note, which Plaintiff alleges excused her from "doing anything physical." (*Id.* ¶¶ 10, 14). The September 23, 2021 doctor's note, electronically signed by Matthew Flanagan, DO, stated:

> To Whom It May Concern
>
> [M.D.] was seen at my office on 9/23/2021. She may not participate in any basketball activities until she (sic) evaluated by Dr. Ryan Sauber.
>
> If you have any questions or concerns, please do not hesitate to call.

(*Id.* ¶ 14).

Mrs. Dotson, M.D.'s mother, testified in her deposition that she believed that this doctor's note excused Plaintiff from participating in any physical education classes and basketball activities. (*Id.* ¶ 16). A second note, dated September 28, 2021, from Dr. Ryan Sauber M.S., stated:

> To Whom It May Concern
>
> [M.D.] was seen at my office on 9/28/2021. She should be excused from missing school today.
>
> If you have any questions or concerns, please do not hesitate to call.

(*Id.* ¶ 18). In her deposition, Mrs. Dotson agreed that Dr. Sauber only excused Plaintiff from school on September 28, 2021; he did not reference or rescind any restrictions regarding M.D.'s participation in physical activity. (*Id.* ¶¶ 19-20).

Gabrielle Santinoceto, an athletic trainer at Trinity, testified that, at the relevant time, before she could have helped rehabilitate an athlete, Trinity's policy required an injured athlete to provide the school district with a note from the athlete's medical provider, describing the nature and extent of the athlete's injury and outline the restrictions the physician has placed on the student due to the injury (*Id.* ¶¶ 21-24); (ECF No 35-8, at 2). M.D. never provided Ms. Santinoceto with a doctor's note concerning her diagnosis and restrictions. (ECF No. 37, at ¶ 27). Further, because of M.D.'s injury, and without a doctor's note describing the extent of M.D's injuries and attendant restrictions, Coach Miller initially had M.D. sit on the sidelines during practices and games. (*Id.* ¶ 30).

In December 2021, Coach Miller communicated to Ricci A. Rich, Director of Athletics and Activities for Trinity Area School District, that she asked M.D. multiple

times to provide a doctor's note to better understand M.D.'s injuries, but M.D. never produced such a note. (*Id.* ¶ 56). In the absence of a doctor's note that described the specifics of M.D.'s injuries and any restrictions, Mr. Rich decided that M.D. could no longer attend practices and games with the team, pursuant to Trinity's policies. (*Id.* ¶ 60). On December 16, 2021, Mr. Rich and Coach Miller met with M.D. and informed her that she would no longer be able to attend any practices or games with the Trinity girls' basketball team until she provided a doctor's note. (*Id.* at ¶¶ 61-62). Mr. Rich communicated to M.D. that she was not being removed from the team or being punished. (*Id.* at ¶ 63).

Earlier, in December 2021, the Trinity girls' basketball team had attended a tournament in Washington, D.C. (*Id.* ¶ 31). M.D. travelled with the team to this tournament, but she did not dress to play. (*Id.* ¶ 32). At the hotel in D.C., one of the players on the team, B.R., told the other players about an alleged sexual assault that occurred between B.R.'s brother, C.R., and another Trinity student. (*Id.* ¶ 33). The following week, Ms. Santinoceto overheard M.D. and two other players talking about the alleged sexual assault. (*Id.* ¶ 35). Ms. Santinoceto reported that conversation to Dr. Sam Demian, a Trinity District Administrator, who in turn reported it to Craig Uram, the Trinity High School Principal. (*Id.* ¶¶ 36-37).

Mr. Uram met with each of the three girls individually and asked each to write a statement regarding what she had heard about the alleged sexual assault. (*Id.* ¶¶ 38, 46). During Mr. Uram's meeting with M.D., M.D. stated that she had not witnessed the alleged assault and could not speak to whether it occurred. (*Id.* ¶¶ 41-42). At M.D.'s deposition, she testified that the only intimidating statement made by Mr. Uram, that she

recalled, was Mr. Uram's explanation about why someone might start an unfounded rumor. (*Id.* ¶ 49). It is undisputed that, while M.D. was writing her statement, M.D. asked, "Mr. Uram, why would somebody say something that's not true?", and that Mr. Uram responded, "Kiddo, I don't know. Kids say -- people say things all the time that aren't true. (*Id.* ¶¶ 43-44). Mr. Uram also told M.D. that sometimes people also say untrue things about him and that it is hurtful. (*Id.* ¶ 45). In M.D.'s Amended Complaint, she alleged that Mr. Uram "made intimidating comments during her interview that could have the effect of preventing her from continuing to participate in the process." (*Id.* ¶ 48). However, M.D. testified that Mr. Uram's comments did not influence the contents of her statement. (ECF No. 35-2 at 18).

M.D alleges in her Amended Complaint that on December 15, 2021, Coach Miller told the Trinity girls' basketball team that a game scheduled for December 16, 2021 was cancelled because "a rumor was going around." (ECF No. 9). In his affidavit, Mr. Rich, stated that the basketball game scheduled to be played on December 16, 2021, was cancelled, at the request of the opposing team, because several members of the opposing team had contracted COVID-19. (ECF No. 35-8, at 6); (ECF No 35-8, at Ex. 1).

It is undisputed that Mr. Uram did not communicate any information regarding the alleged sexual assault investigation to any of Coach Miller, Mr. Rich, or the Athletic Department. (ECF No. 37, at ¶ 52). At the time of Mr. Rich's December 2021 decision, to exclude M.D. from attending team practices and games until she provided a compliant doctor's note, and at the time of the December 16, 2021 meeting between Mr. Rich, Coach Miller, and M.D., neither Mr. Rich nor Coach Miller were aware of the allegations

regarding the sexual assault and that M.D. had reported to Mr. Uram what she knew. (*Id.* at ¶¶ 64-65).

## II. Relevant Legal Standards

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted). Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit. *Id.* In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion. Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 256-57 (internal citation omitted). "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of the party." *Id.* at 251 (internal citation omitted).

## III. Discussion

### A. Title IX Retaliation Claim

Plaintiff brings a retaliation claim against Defendant under Title IX, alleging that Trinity retaliated against her because she reported information about an alleged sexual assault to Mr. Uram. (ECF No. 9, at ¶¶ 31-40). Defendant argues that Plaintiff fails to establish a prima facie case for retaliation under Title IX, because she cannot establish that Defendant took any adverse action against her, or that a causal connection existed between Plaintiff's report of information about an alleged sexual assault and the alleged adverse action taken against her. (ECF No. 34, at 5). Plaintiff argues that a genuine issue of material fact exists, precluding entry of summary judgment.

To establish a prima facie case of retaliation under Title IX, "a plaintiff must show: (1) that he or she engaged in protected activity; (2) defendant had knowledge of the protected activity; (3) adverse school-related action was taken against plaintiff; and (4) a causal connection between the protected activity and the adverse action." *S.K. v. North Allegheny School District*, 168 F. Supp. 3d 786, 803-04 (W.D. Pa. 2016) (citing *Yan v. Penn State University*, 529 Fed. Appx. 167, 171 (3d Cir. 2013)). For an action to be considered materially adverse, a plaintiff must establish that the action "might well have dissuaded a reasonable [person] from making or supporting a charge of [or complaint about] discrimination." *Id.* at 804 (citing *Burlington Northern & Santa*

*Fe Ry. v. White*, 548 U.S. 53, 68 (2006). "To establish the requisite causal connection, Plaintiff must allege facts to demonstrate either: '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 615 (E.D. Pa. 2014) (citing *Cooper v. Menges*, 541 Fed. Appx. 228, 232 (3d Cir. 2013)). If a plaintiff establishes a prima facie case for retaliation, then the burden shifts to the defendant to put forth a legitimate nonretaliatory reason for their conduct. *Doe v. Mercy Catholic Medical Center*, 850 F.3d 545, 564 (3d Cir. 2017) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340–42 (3d Cir. 2006)). If a defendant does so, then plaintiff must show that the defendant's proffered reason was false, and that retaliation was the actual reason the adverse action was taken against them. *Id.*

First, the Court will address whether there exists a genuine issue of material fact that M.D.'s allegations of retaliatory actions, i.e. the comments made by Mr. Uram to M.D. while she was making her written statement [1], and M.D.'s removal from the Trinity girls' basketball team, were adverse actions. As to the comments, it is undisputed that when interviewing M.D. on December 15, 2021, Mr. Uram made certain comments to M.D., while she was making her written statement about the alleged sexual assault. In her Amended Complaint, M.D. alleged that they were "intimidating" and "could have the effect of preventing her from continuing to participate in the process." (ECF No. 7, at ¶ 35). During her deposition, M.D. testified that Mr. Uram did not give her any guidance or direction on what to say in her written statement. (ECF No. 35-2, at

[1] The Court observes that Mr. Uram's comments relate more to the discrimination claim brought by M.D.in her Amended Complaint that were dismissed by the Court's Order on October 14, 2022. However, the parties reference these allegations in their arguments in the present briefings; thus, the Court will discuss their merit.

18). M.D. further testified that Mr. Uram's comments did not influence the contents of her statement. (*Id.* at 18).

In her deposition, M.D. testified that Mr. Uram's comments about why someone might make up a rumor were intended to "talk [M.D.] out of" making the statement. (*Id.* at 55). However, M.D. was not dissuaded from making her statement. In fact, M.D. provided a written statement during that same interview; and, testified that the statements made by Mr. Uram did not affect what she wrote about the alleged sexual assault. These statements do not constitute a materially adverse action that would dissuade a reasonable person from making or supporting a charge of discrimination. Thus, M.D. fails to establish that a genuine issue of material fact exists that the comments made by Mr. Uram to M.D. while she was making her written statement were materially adverse. As such, Plaintiff fails to establish the adverse action element for her retaliation claim related to the comments made by Mr. Uram.

As to M.D.'s removal from the basketball team, this action is a materially adverse action. Defendant argues that M.D.'s removal from the girls' basketball team is not an adverse action, because M.D. had failed to provide a doctor's note that described the extent of her injuries. (ECF No. 34, at 5). Such argument is related to the reason such an action was taken, but not as to whether the action itself is considered adverse. As such, Plaintiff has sufficiently set forth an adverse action to satisfy the first element of a prima facie case for retaliation.

Next, the Court will address whether a causal connection exists between M.D.'s statement made about the alleged sexual assault and her removal from the Trinity girls' basketball team. M.D. alleges that she was removed from the basketball team because she reported the alleged sexual assault to Mr. Uram. (ECF No. 37-1, at 7). M.D. argues that the circumstances of her removal from the team, specifically, the proximity in time from her written statement and her

removal, establish a temporal basis to establish a causal connection between the two. (*Id.*). In support of this claim, she testified that on December 15, 2021, the same day M.D. met with Mr. Uram and made her written statement, Coach Miller informed the Trinity girls' basketball team that the game scheduled for December 16, 2021, was cancelled, because a "rumor was going around." (ECF No. 35-2, at 38). M.D. also alleges that, on December 15, 2021, she was sent home from practice by Coach Miller, because she was not required to attend. (ECF No. 9, at ¶ 23). Then, on December 16, 2021, M.D. was informed by Mr. Rich and Coach Miller that she could no longer participate on the girls' basketball team, unless she provided a doctor's note which described the extent of her injuries and restrictions. (ECF No. 37, ¶¶ 60-64).

The record evidence supports that the December 16, 2021 basketball game, was cancelled, following a request from the opposing team because of a quarantine of several opposition players due to an outbreak of COVID-19. This is detailed in Mr. Rich's affidavit, which includes text messages from Harry Kaufman, the Athletic Director from the opposing team, Uniontown Area High School. (ECF No. 35-8, at 3); (ECF No 35-8, at Ex. 1). Further, it is undisputed that, when Mr. Rich made his decision that M.D. could no longer attend practices and/or games without a doctor's note describing M.D.'s injuries and setting forth details of her restrictions, he was not aware of any ongoing sexual assault investigation by Mr. Uram or of M.D.'s involvement in said investigation. (ECF No 37, at ¶¶ 60-65). It is also undisputed that, when M.D. was informed of Mr. Rich's decision at the December 16, 2021 meeting, she was told that she was not being permanently removed from the team or punished, and that she could return to the team once a compliant doctor's note was provided. *Id.* As such, based upon the record evidence, there is no genuine issue of material fact present to support M.D.'s causation element for her retaliation claim. For this reason, M.D.'s retaliation claim fails.

Even if M.D. had established a prima facie case for retaliation, she fails to provide sufficient record evidence to support that Trinity's nonretaliatory reason for removing her from the girls' basketball team, i.e. that she failed to provide a doctor's note describing the extent of her injuries, was pretextual. M.D. provides only two instances to support that her removal from the girls' basketball team was pretextual. First, M.D.'s own testimony that Mr. Uram made "intimidating" statements when she was making her written statement about the alleged sexual assault. Second, M.D.'s testimony that Coach Miller told the team that the December 16, 2021 basketball game was being cancelled because of "a rumor going around." However, it is undisputed that Mr. Rich, who was unaware of the investigation related to the alleged sexual assault, made the decision to remove M.D. from the girls' basketball team until she provided a doctor's note describing the extent of her injuries and restrictions. Further, Mr. Rich's affidavit and text messages with Mr. Kaufman support that the December 16, 2021 girls' basketball game was cancelled because several opposing players had contracted COVID-19. Such evidence supports the legitimacy of Defendant's reasons for precluding M.D. from team practices and games. Thus, the record does not provide sufficient evidence to present any question of material fact to show that Trinity's reason for removing M.D. from the girls' basketball team was pretextual.

M.D. has not met her burden to establish a genuine issue of material fact that her removal from the Trinity girls' basketball team was causally connected to her statement made to Mr. Uram about the alleged sexual assault. Thus, M.D. fails to establish a prima facie case of retaliation under Title IX as regards Mr. Uram's comments and her removal from the girls' basketball team. Further, even if she had successfully established a prima facie case, she fails to establish that Trinity's nonretaliatory reason was pretextual.

## IV. Conclusion

For the above reasons, Defendant's Motion for Summary Judgment will be granted. Judgment will be entered in favor of Defendant and against Plaintiff as to Plaintiff's retaliation claim, at Count I, in her Amended Complaint. A separate Order to follow.

DATE: _6/14/2024____

Marilyn J. Horan
United States District Judge